# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RALPH MAIOLO, | ) | |
| | ) | No. 15 C 10372 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ralph Maiolo ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("SSA") denying his Social Security disability benefits under Title II ("DIB") of the Social Security Act ("the Act"). Plaintiff filed a motion for summary judgment [13] and the Commissioner has filed a cross-motion for summary judgment [18]. After reviewing the record, the court grants Plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment.

## BACKGROUND

### I. Procedural History

Plaintiff filed a DIB application on January 17, 2014 alleging a disability onset date of November 11, 2013 due to coronary artery disease, atrial fibrillation, dyslipidemia, hypertension-benign, benign prostatic hypertrophy, and high blood pressure. (R. 68, 228-31.) His initial application was denied on April 14, 2014, and again at the reconsideration stage on December 19, 2014. (R. 75, 91.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ")

---

[1] [1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

on January 21, 2015, and the hearing was scheduled on July 23, 2015. (R. 28-67, 107.) Plaintiff appeared at the hearing with his attorney. (R. 28-67.) A medical expert ("ME") and vocational expert ("VE") also appeared and offered testimony. (*Id.*) On August 14, 2015, the ALJ issued a written decision denying Plaintiff's application for DIB benefits. (R. 10-22.) The Appeals Council ("AC") denied review October 14, 2015, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). (R. 1-3; *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).

## II. ALJ Decision

On August 14, 2015, the ALJ issued a written determination denying Plaintiff's DIB application. (R. 10-22.) As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2016. (R. 15.) At step one, the ALJ determined that Plaintiff did not engage in Substantial Gainful Activity ("SGA") since his alleged onset date of November 11, 2013. (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of obesity, hypertension with LVH, atrial arrhythmias, sleep apnea, and sclerotic changes of the heart valve. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 25.) Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (*Id.*) The ALJ also found that Plaintiff's RFC was further limited to no exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, or extreme heat. (*Id.*) At step four, the ALJ concluded that Plaintiff could not perform any of his past relevant work. (R. 20.) Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national

economy that Plaintiff could perform. (R. 21.) Specifically, the ALJ found that Plaintiff could work as a mail clerk, office helper, and small parts assembler. (*Id.*) Because of this determination, the ALJ found that Plaintiff was not disabled under the Act. (R. 21-22)

## STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[ ] articulat[ion] of her justification" is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

## ANALYSIS

Plaintiff asserts that the ALJ made three errors. First, Plaintiff argues that the ALJ improperly analyzed whether het met or equaled a listing. Second, Plaintiff argues that the ALJ incorrectly determined his credibility. Third, Plaintiff argues that the ALJ erred in his RFC finding. The Court finds that the ALJ's RFC assessment was not supported by substantial evidence. Because this conclusion requires reversal, the alleged credibility error need not be addressed at this time.

**A.  The ALJ's Step Two & Three Determinations Were Supported by Substantial Evidence**

Plaintiff argues that the ALJ improperly analyzed whether he met or equaled a listing. (Pl.'s Mem. at 9.) Plaintiff contends that the ME gave contradictory testimony regarding whether

3

or not his left ventricle met listing level, and that the ALJ was required to discuss the contradiction. (Id.) The Commissioner responds that the ALJ reasonably relied on the testifying ME's opinion in determining that Plaintiff did not meet Listing 4.02. (Def.'s Mem. at 2.) The Commissioner contends that Plaintiff misread the ME's testimony and the Listing because although the ME testified that Plaintiff's enlarged atrium met Listing 4.02(A), Plaintiff failed to meet Listing 4.02(B) and the ME ultimately concluded Plaintiff did not meet Listing 4.02. (Def.'s Mem. at 3.) At step two, an ALJ must determine the medical severity of a claimant's impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); SSR 96-3p. Listing 4.02 is chronic heart failure. The required level of severity for this impairment is met when the requirements in both "A" and "B" are satisfied. The Commissioner's argument is persuasive. Plaintiff misread both the ME's testimony and the Listing. The ME's testimony never equated Plaintiff's impairment to listing level. The ME testified that Plaintiff's echocardiogram showed that his left atrium was dilated to 4 centimeters, and that Plaintiff was below listing level. (R. 47.) Further, 4.02(A) explicitly states that an enlarged left atrium must be greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability, which is .5 centimeters greater than the size of Plaintiff's left atrium. (R. 438.) Therefore, it appears that Plaintiff's impairments did not singly meet listing level 4.02.

Next, Plaintiff contends that the ME failed to consider his atrial fibrillation and mitral valve disease in combination. (Pl.'s Mem. at 10.) The Commissioner responds that just because the ME canvassed Plaintiff's impairments one by one does not mean that either the ME or the ALJ failed to consider the combined impact of the impairments. (Def. Mem. at 3.) At step three, an ALJ must consider whether a claimant's impairments meet or medically equal a listed impairment, either singly or in combination. 20 C.F.R. § 404.1520(a)(4)(iii). An ALJ should

identify the Listing by name and offer more than a perfunctory discussion. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). The ALJ must also obtain the opinion of a medical expert on the issue. (*Id.*) In this case, there is nothing in the record or peculiar about the ME's testimony that shows the ME did not consider Plaintiff's impairments in combination, when assessing whether Plaintiff met or equaled a listing. Further, Plaintiff does not provide this Court any guidance on what particular Listing his impairments may have equaled. The Court is not concluding that Plaintiff's impairments do not ultimately equal a Listing, it is asserting that Plaintiff's argument failed to support the assertion that the ALJ did not provide substantial evidence in his step two and three determinations. Therefore, the ALJ's step two and three findings will not be disturbed.

**B.   The ALJ Failed to Support His RFC Finding with Substantial Evidence & Improperly Weighed the Medical Evidence**

Plaintiff argues that the ALJ erred in his RFC finding. Plaintiff contends that the ALJ failed to consider the opinion of cardiologist, Dr. Dominick Stella, M.D., which asserted that Plaintiff's complaints of fatigue were probably related to his clonidine[2] usage and lowering his blood pressure. (Pl.'s Mem. at 12.) The Commissioner responds that the ME specifically considered Plaintiff's clonidine usage and allegations of fatigue; however, the ME determined that Plaintiff retained the RFC to perform a reduced range of light work. (Def.'s Mem. at 11.) The Commissioner's argument is unpersuasive. On December 4, 2013, treating cardiologist, Dr. Stella wrote to Dr. John P. Kalamaris, D.O. regarding Plaintiff's cardiology follow-up. (R. 435-36.) Dr. Stella opined that Plaintiff was then without complaints of chest pain or shortness of breath, at rest. (R. 435.) However, Dr. Stella noted that Plaintiff complained of fatigue, and that

---

[2] clonidine is a "antihypertensive," which is "an agent that counteracts high blood pressure." *Dorland's Medical Dictionary* http://www.dorlands.com (last visited Jul. 29, 2016) [hereinafter *Dorland's* ].

5

Plaintiff's complaints were probably related to the lowering of his blood pressure, in addition to his clonidine usage. (R. 436.) Dr. Stella further noted that he would attempt to wean Plaintiff from the clonidine over time once his blood pressure was under control. (*Id.*) In his decision, the ALJ summarized portions of Dr. Stella's treatment notes, but neglected to discuss Dr. Stella's letter to Dr. Kalamaris, which suggested Plaintiff was suffering from medication side-effects. (R. 17, 431, 435-36.) An ALJ is required to evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(d). After the ALJ's required evaluation of Dr. Stella's opinion regarding Plaintiff's fatigue and medication usage, she was then required to weigh that opinion using the checklist of factors set forth in 20 C.F.R. § 404.1527(c). *See also Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ('Weighing conflicting evidence from medical experts...is exactly what the ALJ is required to do.') The ALJ was not allowed to disregard Dr. Stella's opinion simply because the ME offered a contradictory opinion regarding the cause of Plaintiff's fatigue. "An ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) citing *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir. 1982). Simply parsing out a few statements of the medical evidence is not adequate in explaining why contrary evidence does not persuade. This "sound-bite" approach to record evaluation is an impermissible methodology for evaluating the evidence. (*Id.*)

Next, Plaintiff argues that the ALJ improperly weighed the opinions of the consultative mental experts because the ALJ failed to give the required good reasons for giving little or no weight. (Pl.'s Mem. at 14.) The Commissioner responds that the ALJ reasonably explained that these opinions were based on an incomplete record, the entire record contained no evidence of mental impairments, and Plaintiff consistently reported having no mental impairments. (Def.'s Mem. at 11.) The Court finds that the ALJ's reasoning was not supported by substantial

evidence. The ALJ was not free to disregard Plaintiff's established impairment of unspecified depressive disorder. Instead, the ALJ had a duty to fully develop the record before drawing any conclusions. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). *See also Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012). An ALJ may not "play doctor" by using his own lay opinions to fill evidentiary gaps in the record. In this case, the ALJ opined that the opinions were based on an incomplete record, and significantly, there was no evidence of mental treatment in the record. The ALJ further noted that while the consultative examiner found a diagnosis of depressive disorder, evidence received at the hearing level revealed that the Plaintiff consistently reported no mental impairments. (R. 20.) At that point, if the ALJ had questions or concerns about Plaintiff's diagnosis of depression, he should have sought another medical professional opinion regarding its existence and severity. However, since it was established that Plaintiff had a mental impairment, the ALJ was required to fully develop the record and order a Psychiatric Review Technique to assess the severity of Plaintiff's mental impairment. When evaluating mental impairments, the regulations require that the Administration follow a special technique. The Psychiatric Review Technique described in 20 CFR 404.1520a and summarized on the Psychiatric Review Technique Form requires adjudicators to assess an individual's limitations and restrictions from mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps two and three of the sequential evaluation process. SSR 96-8p.

Lastly, Plaintiff contends that the ALJ improperly gave no weight to the opinions of treating physician, Dr. Melissa Pradhan, M.D., because Dr. Pradhan was not required to be a

7

cardiologist to render an opinion. (Pl.'s Mem. at 14.) The Commissioner responds that the ALJ appropriately explained that Dr. Pradhan was not a cardiologist, and Plaintiff's impairments that were in her expertise, such as Plaintiff's obesity and muscoskeletal complaints, did not account for the extreme limitations that Dr. Pradhan imposed. (Def.'s Mem. at 10.) The Commissioner contends that more importantly, the ALJ explained that he accepted the opinion of the testifying ME, that the evidence in the record did not account for the limitations that Dr. Pradhan imposed. (Def.'s Mem. at 10.) On January 29, 2015, Dr. Pradhan completed a Physical RFC Questionnaire. (R. 487-89.) Dr. Pradhan indicated that occasionally and frequently, Plaintiff could only lift and carry six to ten pounds; stand/sit less than four hours in an eight-hour workday; frequently could handle, finger, and feel; occasionally could push/pull with his hands and feet, stoop, and reach; never could climb ramps, stairs, ladders, or ropes, balance, crouch, or crawl; and must avoid exposure to temperature extremes, high humidity, moving machinery, and cold air. (R. 487.) Dr. Pradhan also indicated that Plaintiff had problems with memory loss, and that during the day, every two hours for fifteen minutes, Plaintiff's legs needed to be elevated above heart level. (Id.) Dr. Pradhan noted that Plaintiff's limitations were based on the diagnoses of atrial fibrillation, coronary artery disease, lower extremity edema, hypertension, and dyspnea on exertion and cited Plaintiff's EKG and cardiac catheter for support of her findings. (R. 488.) The Commissioner's argument is unpersuasive because the ALJ failed to support the weight given to Dr. Pradhan's opinion with substantial evidence. An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir.

2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. In this case, the ALJ discounted Dr. Pradhan's opinion by noting that Dr. Pradhan was an internal medicine physician and not a cardiologist. (R. 19.) The ALJ noted that Plaintiff's obesity alone could not explain the sitting or standing limitations, and there were no neurological or muscoskeletal complaints to account for such a reduction. (R. 19.) The ALJ further noted that the limitations were also inconsistent with the record, which did not account for Plaintiff's alleged symptoms as explained by the testifying ME. (R. 19-20.) Although it appears as though the ALJ provided some analysis to support his finding, his required assessment did not end there. Even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See id*. According to the ALJ's decision, it does not appear that the ALJ considered the required regulatory factors when weighing Dr. Pradhan's opinion. The ALJ did not consider the length, nature, and extent of Plaintiff and Dr. Pradhan's treating relationship. The record indicates that as early as May 6, 2014, Dr. Pradhan was treating Plaintiff for his blood pressure, hypertension, edema, obesity, smoking, and was advising him on his heart condition with the aid of cardiologist Dr. Ajay Parikh, M.D. (R. 577, 615, 628, 652.) Nor did the ALJ consider the frequency of examination. The record indicates that from May 2014 and thereafter, Dr. Pradhan examined Plaintiff at least once per month, and sometimes multiple times per month. (R. 505, 535, 558, 569, 572, 586, 593, 597, 598, 602, 604, 622, 624, 652-55.) It seems as though the ALJ did consider Dr. Pradhan's specialty, by noting that she was not a cardiologist. However, a physician's specialty is just one factor that can be

considered when weighing a physician's opinion. Moreover, if the ALJ determined that Dr. Pradhan, an internist, was not qualified to give an opinion about Plaintiff's functional limitations because she was not a cardiologist, then he should have concluded that the testifying ME was equally as unqualified, being that the ME was also not a cardiologist, but an internist and pulmonologist. (R. 42.) Further, Dr. Pradhan consistently performed blood pressure checks, blood and urine analysis, referred Plaintiff to a cardiologist on several occasions, consistently prescribed and adjusted Plaintiff's medications, and overall was well informed of Plaintiff's condition and RFC. Given the totality of the factors, Dr. Pradhan's opinion should not have been dismissed simply because she was not a cardiologist. On remand, the ALJ should take great care in reweighing the opinions of Dr. Pradhan and all of the other physicians.

Because this conclusion requires reversal on the basis the ALJ did not properly consider and assess Plaintiff's RFC due to him he improperly weighing several physicians' medical opinions, Plaintiff's complaint of the ALJ's credibility assessment need not be addressed at this time. The Social Security Administration (the "Administration") has recently updated its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. On remand, the ALJ should re-evaluate Plaintiff's subjective symptoms in light of SSR 16-3p.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. This matter is remanded for further proceedings consistent with this opinion.

**DATE: January 5, 2017**

_____
**U.S MAGISTRATE JUDGE, SUSAN E. COX**